1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   WILLIE BELTON, III,                    No. CIV S-10-0229-GEB-CMK-P

12             Petitioner,

13        vs.                          <u>FINDINGS AND RECOMMENDATIONS</u>

14   McDONALD,

15             Respondent.

16   _____/

17             Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's petition

19   for a writ of habeas corpus (Doc. 1) and respondent's answer (Doc. 10).

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

# I.  BACKGROUND

### A.    <u>Facts</u>[1]

The state court recited the following facts, and petitioner has not offered any clear

and convincing evidence to rebut the presumption that these facts are correct:

> Christine B. started a relationship with defendant in February 2005. They were intimate with each other and started to live together sharing the room Christine had been living in when they met.  Upon being kicked out of the room, Christine and defendant "were pretty much homeless after that, staying in motels and maybe with a cousin or nephew of his or something."  They took their meals together, and since defendant had no income, Christine covered all of their expenses.  She would buy things for defendant as well as herself and they would occasionally shop together.
>
> The relationship ended in April 2005.  At the time, Christine and defendant were sleeping together in a car parked next to her friends Lynetta's house.  Lynetta was willing to let Christine live inside her house, but was uncomfortable having a stranger (defendant) sleep inside. Christine chose to sleep in the car with defendant rather than use Lynetta's house by herself.  However, defendant was allowed to bathe, watch television, and eat at Lynetta's house.
>
> The relationship ended over defendant's drug use, his disappearing for days at a time, and his inability to help Christine as she looked for a home and job.  One day, defendant drove up in a car with two passengers, another man and a woman, and asked Christine for his belongings. Defendant took his things and left peacefully.
>
> Christine testified that she was not in love with defendant and barely knew him.  She stated that there were two instances in which there was violence in the relationship.  In the first, defendant grabbed her by the throat after she asked him if he was taking drugs again.  She could not remember the specifics of the second, except that it "most likely had to do with his drug abuse."  Defendant also threatened her once while they were together – he told Christine that he would kill her if he ever caught her walking on Del Paso Boulevard with another man.
>
> On May 6, 2005, after defendant and Christine had ended their relationship, Christine was on Del Paso Boulevard to meet Ronnie, a male friend.  (The two later became romantically involved).  Christine described Ronnie as a "mutual friend."
>
> Christine saw Ronnie from 10 to 15 feet away.  As she walked toward him, defendant grabbed Christine's shoulder from behind and turned her around, saying, "I – I told you.  What are you doing here, bitch?"  Christine, confused, asked to be let go, but defendant grabbed her

---

[1]       Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  <u>See</u> <u>id.</u>  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

by the hair and the right side of her face and slammed the other side of her head three times into a brick wall.

Ronnie approached the two and held defendant, telling him to calm down, which allowed Christine to break away and start to cross the street. Defendant struck Ronnie, knocking him to the ground, then ran to Christine and pulled her across the street by her hair and her arm.

Christine tried to pull away from defendant.  Defendant punched her in the mouth, which caused her to lose part of a tooth.  He also punched her on the side of her head "maybe twice."  Christine fell to the ground from the force of the blows and the pain of the lost tooth.  She got into a fetal position and defendant kicked her and stomped on her arm.  At some point, Ronnie ran up and pushed defendant off of her, allowing Christine to escape and call the police.

Christine talked to the police before going to the hospital.  She got stitches, but was unsure how many.  Christine thought she had four to five stitches in her eyebrow and stitches on two parts of her mouth.  Part of one tooth was knocked out to the root.

The police sergeant who responded to the incident observed Christine was crying; she had a lot of blood around her face and a split lip, with much blood dripping from her lip.  She had "pretty big" lump on the left side of her head and swelling along the left side of her face and jawline.

The emergency room physician diagnosed Christine with multiple contusions after an assault and multiple lacerations that required sutures. Christine also had a bruise on her right shoulder, swelling in the right posterior pelvic area, bruising on the right arm, and a fractured front tooth as a result of the assault.

Gwendolyn S. testified regarding an uncharged prior assault by defendant.  In 2003, Gwendolyn and defendant lived together as boyfriend and girlfriend for less than a month.  In June 2003, Gwendolyn and defendant were in the bedroom.  Defendant asked Gwendolyn for the keys to her car.  She refused, turned the light off, and went to bed.  Defendant asked her to move over so he could get into bed with her.  She refused and felt a punch and saw "stars."  Defendant punched her three times with a closed fist – once in the jaw, and once in each eye.

**B.   Procedural History**

Petitioner was convicted following a jury trial of corporal injury to a co-habitant with great bodily injury, and battery with serious bodily injury.  In separate proceedings, the jury found that petitioner had suffered two prior "strike" convictions for purposes of sentence enhancement. Petitioner was sentenced to an indeterminate term of 32 years to life in state prison.  The conviction and sentence were affirmed on direct appeal in a reasoned decision issued by the California Court of Appeal.  The California Supreme Court denied review without comment or citation.  Respondent concedes petitioner's claims are exhausted.

## II. STANDARDS OF REVIEW

1

2          Because this action was filed after April 26, 1996, the provisions of the

3   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively

4   applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.

5   (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA

6   does not, however, apply in all circumstances.  When it is clear that a state court has not reached

7   the merits of a petitioner's claim, because it was not raised in state court or because the court

8   denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

9   habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.

10  2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach

11  petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208

12  (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on

13  perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the

14  evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

15  petition de novo where state court had issued a ruling on the merits of a related claim, but not the

16  claim alleged by petitioner).  When the state court does not reach the merits of a claim,

17  "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

18          Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

19  not available for any claim decided on the merits in state court proceedings unless the state

20  court's adjudication of the claim:

21              (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as determined
22              by the Supreme Court of the United States; or

23              (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the State
24              court proceeding.

25  Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

26  "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

1   standards, "clearly established law" means those holdings of the United States Supreme Court as

2   of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

3   (citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not

4   the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

5   banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas

6   relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,

7   753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

8   For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

9   to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

10  state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

11  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

12  created by state conduct at trial because the Court had never applied the test to spectators'

13  conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

14  holdings.  See Carey, 549 U.S. at 74.

15          In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

16  majority of the Court), the United States Supreme Court explained these different standards.  A

17  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

18  the Supreme Court on the same question of law, or if the state court decides the case differently

19  than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

20  court decision is also "contrary to" established law if it applies a rule which contradicts the

21  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

22  that Supreme Court precedent requires a contrary outcome because the state court applied the

23  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

24  Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

25  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

26  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

1    1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

2    case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

3    is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

4              State court decisions are reviewed under the far more deferential "unreasonable

5    application of" standard where it identifies the correct legal rule from Supreme Court cases, but

6    unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

7    510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

8    that federal habeas relief may be available under this standard where the state court either

9    unreasonably extends a legal principle to a new context where it should not apply, or

10   unreasonably refuses to extend that principle to a new context where it should apply.  See

11   Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

12   decision is not an "unreasonable application of" controlling law simply because it is an erroneous

13   or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

14   75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found

15   even where the federal habeas court concludes that the state court decision is clearly erroneous.

16   See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

17   deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.

18   As with state court decisions which are "contrary to" established federal law, where a state court

19   decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

20   unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

## III.  DISCUSSION

Petitioner raises the following claims: (1) the evidence was insufficient to establish co-habitation; and (2) the evidence was insufficient to establish serious bodily injury. When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[2]  Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas.  See id.  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991);  see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993).  The federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law.  See Jackson, 443 U.S. at 324 n.16.

### A.    Co-Habitation

The state court addressed this claim as follows:

> Section 273.5, subdivision (a), provides in pertinent part that any person who willfully inflicts "corporal injury resulting in a traumatic condition" upon a "cohabitant" or "former cohabitant" is guilty of a felony.  Defendant contends the evidence is insufficient to support a finding that he and Christine were or ever had been cohabitants.  We disagree and find substantial evidence that defendant was a former cohabitant at the time of the offense.

---

[2]    Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review.  A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson.  Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

7

* * *

1

2
       The cases addressing the cohabitation element of section 273.4
"have interpreted it broadly, refusing to impose any requirement of a

3
'quasi-marital relationship.'" (citation omitted).  For purposes of section
273.5, the term "cohabitant" "required something more than a platonic,

4
rooming-house arrangement." (citation omitted).  It refers to an unrelated
couple "living together in a substantial relationship – one manifested,

5
minimally, by permanence and sexual or amorous intimacy." (citation
omitted).  A permanent address is not necessary to establish cohabitation,

6
as cohabitation can be found even in "unstable and transitory" living
conditions.  (citation omitted).

7
       Defendant contends his relationship with Christine was neither
permanent nor long enough to qualify as cohabitation under the statute.

8
We disagree.

9
The court went on to note that Christine testified that she and defendant lived together, first in the

10
room she rented before they met, and then in a car.  Christine also testified that the two had a

11
sexual relationship at the time.

12
       In the instant federal petition, petitioner merely cites Jackson and states that the

13
evidence of cohabitation was insufficient.  He does not, however, offer any reasoning supporting

14
his claim.  Notwithstanding petitioner's deficient petition, the court finds no error.  As indicated

15
above, the constitutional test under Jackson is whether a reasonable jury could have reached the

16
conclusion that the jurors in this case reached.  The court finds that the evidence was sufficient to

17
allow any reasonable jury to conclude that petitioner and Christine were co-habitants at the time

18
of his attack on her.  Specifically, the two lived together and continued to do so even after they

19
no longer lived in the room Christine had originally rented.  They continued to live together in a

20
car outside Lynetta's house.  The fact that Christine chose to sleep with defendant in the car

21
rather than in the house further demonstrates the nature of the relationship.  Finally, the evidence

22
indicates that the relationship was sexual.

23
       The court concludes that the state court's denial of this claim was not based on an

24
unreasonable application of Jackson.

25
///

26
///

1    **B.      Serious Bodily Injury**

2                As to this claim, the state court held:

3                    Defendant contends there is insufficient evidence of serious bodily
      injury to support his conviction for felony battery with serious bodily
4     injury.  We disagree.
                    Section 243, subdivision (d), establishes the crime of battery
5     involving serious bodily injury.  In subdivision (f)(4) of section 243,
      "[s]erious bodily injury" is defined as "a serious impairment of physical
6     condition, including, but not limited to, the following: loss of
      consciousness; concussion; bone fracture; protracted loss or impairment of
7     function of any bodily member or organ; a wound requiring extensive
      suturing; and serious disfigurement." (citation omitted).
8                    Defendant contends that a broken tooth is not the same as a broken
      bone, and as a matter of law should not be considered a serious bodily
9     injury.  Subdivision (f)(4) of section 243 provides that the "impairment[s]
      of physical condition[s]" that constitute "serious bodily injury" "includ[es]
10    but [is] not limited to" the list that follows; in other words, the list is not
      exclusive.  As a result of defendant's attack, Christine lost a tooth up to its
11    root.  Because she lacked insurance, she could not replace the tooth, which
      altered her appearance and prevented her from being fully functional.  Her
12    wounds required sutures on one eyebrow and two places on her mouth.
      Taken together, this represents sufficient "serious impairment of [her]
13    physical condition" to support a conviction for battery with serious bodily
      injury.

14

15    As with petitioner's argument concerning co-habitation, the argument concerning serious bodily

16    injury presented in the instant petition is completely conclusory and unsupported by either

17    arguments or facts.

18                In any event, the court finds no error.  The issue is whether the evidence is

19    sufficient to allow a finding of great bodily injury, not whether as a matter of California law,

20    Christine's specific injuries can constitute serious bodily injury.  As to the latter question, this

21    court cannot ignore the California Court of Appeal's analysis in which it concludes that, under

22    California law, Christine's injuries can qualify as serious bodily injury.  As to the former

23    question, the court agrees with the state court that the broken tooth to the root and the need for

24    stitches clearly provided enough evidence upon which a reasonable jury could have convicted.

25                The court concludes that the state court's denial of this claim was not based on an

26    unreasonable application of Jackson.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   December 1, 2010

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE